**TOM MISTICK & SONS, INC., Appellant,**

v.

**Robert B. REICH, Appellee.**

No. 93–5376.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 17, 1995.

Decided June 9, 1995.

Maurice Baskin, Washington, DC, argued the cause for appellant.

Robert L. Shapiro, Asst. U.S. Atty., Washington, DC, argued the cause for appellee. On brief were Eric H. Holder, Jr., U.S. Atty., and R. Craig Lawrence and John D. Bates, Asst. U.S. Attys., Washington, DC.

Before: EDWARDS, Chief Judge; WALD and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Appellant Tom Mistick & Sons, Inc. (Mistick), a Pennsylvania contractor, appeals from an order of the district court granting summary judgment against it. The district court upheld the determination of the Department of Labor (Department) that Mistick's employee fringe benefit plan was not a *bona fide* plan under the Davis–Bacon Act, as amended, 40 U.S.C. §§ 276a *et seq.*, because Mistick's contributions to the. plan were not "reasonably related" to the costs of providing fringe benefits to its employees and because disbursements were made from the plan for non-*bona fide* benefits. The district court also affirmed the Department's disapproval of Mistick's two proposed plans, a medical reimbursement plan and a working condition fringe benefit plan, on the same grounds. Mistick appeals the decisions, seeking full credit under the Davis–Bacon Act for its contributions to the fringe benefit plan as well as approval of its two proposed plans.

We conclude that the Department's application of the "reasonable relationship" test here does not justify invalidation of the fringe benefit plan or disapproval of the medical reimbursement plan. We affirm, howev-

er, the Department's determinations that fringe benefit plan funds were disbursed for non-*bona fide* benefits and that the proposed working condition fringe benefit plan authorizes disbursements for non-*bona fide* benefits. We therefore reverse in part, affirm in part and remand to the Department of Labor for further proceedings as detailed below.

## I. Background

Under the Davis–Bacon Act, a contractor on a federally funded project is required to pay its laborers and mechanics wages that are not less than the "prevailing wage." The prevailing wage is the wage and fringe benefits prevailing in the locality for similarly situated employees and is set out in a wage determination schedule issued by the Secretary of the Department. 40 U.S.C. § 276a(a). An employer's prevailing wage obligation may be satisfied either solely by cash wages to its employees or by cash wages and irrevocable contributions to employee fringe benefit plans or programs. 40 U.S.C. § 276a(b).

Mistick was a contractor on several federally funded construction projects in the Pittsburgh, Pennsylvania area. To comply with its obligations under the Davis–Bacon Act, it established the Davis–Bacon Fringe Benefit Plan (FBP). Mistick made weekly contributions to the FBP for employee work subject to the Davis–Bacon Act (Davis–Bacon work). It made no contributions to the FBP for employee work not subject to the Davis–Bacon Act (private work). Mistick's contributions equalled the difference between the prevailing wage and the cash wages it paid to its employees. Its contributions to the FBP were irrevocable and were placed in individual employee interest-bearing trust accounts managed by a neutral trustee. The costs of administering the FBP and of managing the trust accounts were not deducted from the funds in the accounts. Only the trustee,

acting only at the employee's request, could make disbursements from the employee's trust account. At the end of his Mistick employment, an employee could withdraw the balance in his trust account. Before leaving Mistick's employ, however, an employee, whether performing Davis–Bacon work or private work, could draw on his trust account only for purposes authorized by the FBP.[1] The FBP expressly prohibited disbursements from an employee trust account for any expenses or fringe benefits that Mistick was required to provide or that it customarily provided to its employees. Nevertheless, disbursements were made from the FBP for expenses that Mistick was required to provide. Joint Appendix (JA) 84.

In 1988, the Administrator of the Wage and Hour Division of the Department investigated Mistick's FBP and determined that it was not *bona fide* for two reasons. *See* Letters from Paula V. Smith, Administrator, to Tom Mistick & Sons, Inc. (JA 81–87). First, Mistick's contributions to the FBP were greater than and not "reasonably related" to the costs of providing benefits to its employees. Second, disbursements had been made for expenses not recognized as fringe benefits under the Davis–Bacon Act. The Administrator invalidated the FBP and prohibited Mistick from receiving Davis–Bacon credit for future contributions to it. The Administrator did fully credit Mistick's past contributions to the extent employees had withdrawn them for "personal reasons" (JA 84) or received them as payouts of their account balances when they left Mistick's employ. But she gave Mistick no credit for amounts withdrawn by employees to cover work-related expenses, expenses Mistick itself was required to cover. The Administrator awarded Mistick only partial ("annualized") credit for amounts withdrawn by employees for medical reimbursement and for sick and vacation days because Mistick made contributions only for Davis–Bacon work per-

1. The plan provided:
   The Trustee shall disburse funds [owed to an employee] ... on account of medical or hospital care, pensions on retirement or death, compensation for injuries or illness resulting from occupational activity, or insurance to provide any of the foregoing, for unemployment benefits, life insurance, disability or sickness insur-

   ance, or accident insurance, for vacation and holiday pay, for defraying the costs of apprenticeship or other similar programs, or for other bona fide fringe benefits....
   Joint Appendix (JA) 7. This provision tracks verbatim the disbursements permitted under the Davis–Bacon Act. *See* 40 U.S.C. § 276a(b).

formed by its employees whereas employees could draw on their accounts whether they were performing Davis–Bacon or private work at the time of withdrawal. Annualization requires that the employer receive credit only at the effective annual rate of contribution, that is, the total contributions made by the employer during the year divided by the total number of hours worked by its employees during the year on both Davis–Bacon and private work. JA 83–84. Annualization is designed to ensure that an employer does not receive Davis–Bacon credit for contributions made for Davis–Bacon work but used to pay benefits received by employees while performing private work. *Id.*

While the Department was investigating, Mistick developed three new fringe benefit plans and requested the Administrator to review and approve them. The Administrator approved Mistick's proposed profit sharing plan but disapproved its proposed medical reimbursement plan. According to the Administrator, the medical reimbursement plan was not a *bona fide* plan under the Davis–Bacon Act because Mistick's contributions to it, calculated according to the difference between the prevailing wage and the cash wages Mistick paid its employees, would not "reasonably relate" to the costs of providing benefits to Mistick employees under it. Moreover, the Administrator explained that if the proposed medical reimbursement plan were *bona fide,* Mistick could receive only annualized credit for its contributions. JA 94.

The Administrator also disapproved Mistick's proposed working condition fringe benefit plan. According to the Administrator, the plan was not *bona fide* because it allowed disbursements for expenses not recognized as fringe benefits under the Davis–Bacon Act. The Administrator denied Mistick's request that it be given Davis–Bacon credit for redirecting funds from its invalidated FBP to its Administrator-approved profit sharing plan. She explained that because Mistick's past contributions to the FBP were not fully creditable under the Davis–Bacon Act, the covered employees had not received the prevailing wage at the time of their Davis–Bacon work. She then ordered Mistick to pay back

wages to the covered employees. The Administrator's determinations were upheld by the Department's Wage Appeals Board. JA 117–30. On review, the district court granted summary judgment to the Department. JA 157–66.

## II. Discussion

■ We review the district court's grant of summary judgment *de novo. Tao v. Freeh,* 27 F.3d 635, 638 (D.C.Cir.1994). We will set aside the Wage Appeals Board's decision if it is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). Applying this standard, we conclude that the Department's application of the "reasonable relationship" test does not justify invalidation of the FBP or disapproval of Mistick's proposed medical reimbursement plan. We also conclude that the Department incorrectly annualized Mistick's contributions to the FBP. We uphold the Department's determination that funds were disbursed from the FBP for non-*bona fide* benefits. Similarly, we uphold the Department's disapproval of the working condition fringe benefit plan because it authorizes disbursements for expenses not recognized as fringe benefits under the Davis–Bacon Act.

## A. Reasonable Relationship Test and Annualization

■ The Administrator held that Mistick's FBP was not *bona fide* because it failed the "reasonable relationship" test. The Department requires that "the amount contributed by an employer must bear a reasonable relationship to the *actual rate of costs or contributions* required to provide benefits for the employee in question." JA 83 (emphasis original). According to the Department, the FBP was not *bona fide* because Mistick's contributions were not calculated according to its actual costs of providing benefits to covered employees but instead equalled the difference between the prevailing wage and the wage it paid its employees. We disagree and find the Administrator's contrary conclusion unsupported in light of the actual operation of the FBP.

As described by its counsel at oral argument, Mistick's contributions were irrevocably placed in a separate interest-bearing trust account for each employee who performed Davis–Bacon work. While the employee worked for Mistick, he could draw monies from his trust account to pay for any of the benefits enumerated in the FBP. Once his Mistick employment ended, he could withdraw the balance in his trust account in cash. We find, therefore, that Mistick's contributions on an employee's behalf did not exceed but equalled the benefits received by him. Each employee received the full value of each dollar contributed by Mistick, either as an enumerated benefit purchased with FBP funds or in cash at the end of his employment.[2] The one-to-one ratio between employer contributions on behalf of an employee and value received by the employee cannot be deemed unreasonable.[3]

The Department now argues that it is insufficient that an employee *eventually* receives the full value of the employer's contributions. According to it, the Davis–Bacon Act entitles an employee to the prevailing wage *at the time of his Davis–Bacon work*. At oral argument, the Department claimed that the "best plan" under the Davis–Bacon Act is "cash—full Davis–Bacon wages—given at the time of the Davis–Bacon work." But the statute expressly allows irrevocable contributions to a "fund, plan, or program," 40 U.S.C. § 276a(b)(2)(A), and thus necessarily permits an arrangement by which an employee does not receive every dollar he earns for Davis–Bacon work at the time he earns it.

The Department also maintained at oral argument that an employer should receive Davis–Bacon credit only for contributions to a "traditional fringe benefit plan." It did not identify the statutory basis for the limitation

nor did it explain what a "traditional" fringe benefit or plan is. Instead, it objected to the fact that Mistick's contributions were placed in individual employee trust accounts and did not directly pay for the fringe benefits. Again we note that the Davis–Bacon Act expressly permits a pension plan. 40 U.S.C. § 276a(b)(2). Mistick's FBP was a pension plan with added benefits in that it authorized disbursements before retirement to finance conventional fringe benefits such as medical care, life and disability insurance and vacation and holiday pay. In our view, if the FBP was not "traditional," it is because it was more generous to covered employees than such plans ordinarily are.

The Department's final argument, discussed in its brief but not made at oral argument, is that under Mistick's plan employees did not receive the prevailing wage because their Davis–Bacon work subsidized fringe benefits received during private work periods. According to the Department, because Mistick's contributions were not linked to the actual cost of the enumerated fringe benefits, Mistick could reduce the cash wages it paid its employees for Davis–Bacon work by increasing its contributions to the FBP. Employees could draw from their trust accounts to pay for fringe benefits covered by the FBP even if they were then performing private work. Consequently, Mistick need not have made additional contributions to finance fringe benefits used by employees during periods of private work. Because part of the employees' compensation for Davis–Bacon work paid for fringe benefits used by them during periods of private work, the Department concludes that they did not receive the prevailing wage *for their Davis–Bacon work*. We reject this argument.

---

**2.** The holding in *Miree Construction Corp. v. Dole*, 930 F.2d 1536 (11th Cir.1991), relied upon by the Department, is based on critically different facts. In *Miree*, the employer sought credit under the Davis–Bacon Act for all of its contributions to an apprenticeship program. Some contributions were not expended for employee tuition in connection with the program and the employee thus did not benefit from the contributions. The court denied Davis–Bacon credit for contributions in excess of amounts that actually paid for employee participation in the apprenticeship program.

**3.** The Administrator herself explained that "[a]mounts contributed by an employer over and above the actual cost of providing bona fide benefits would not be creditable for Davis–Bacon purposes *unless the excess amounts are paid to the employees in cash*." JA 83 (emphasis added). Under the FBP, the excess amounts—those monies in an employee's trust account not spent by him during his employment at Mistick—*are* paid to the employee in cash when he leaves Mistick's employ.

The Department acknowledged at oral argument that Mistick made separate contributions to a non-Davis–Bacon plan for its employees' private work. The Department has not established that Mistick's contributions to the FBP for Davis–Bacon work either reduced its contributions to its separate fringe benefit plan for private work or lowered the level of fringe benefits provided to employees for private work. We are not willing to so assume. We therefore cannot find on the record before us that employees did not receive the prevailing wage for their Davis–Bacon work because that work subsidized their private work.

Moreover, we find that by allowing employees to draw on their individual trust accounts during periods of private work, the FBP benefits the employees. An employee may prefer to use funds in his trust account to cover vacation days, sick days or other expenses he incurs during private work periods. Equally important, an employee may use those funds for expenses not covered by Mistick's non-Davis–Bacon plan, such as, according to Mistick's counsel at oral argument, insurance deductibles. If we uphold the invalidation of a plan because employer contributions to it could finance fringe benefits used during private work, employers would then have to limit employees' use of their Davis–Bacon trust accounts to only those fringe benefits used during Davis–Bacon work. Such a result would *dis*advantage employees. We decline, therefore, to uphold the Department's denial of Davis–Bacon credit for Mistick's contributions to the FBP merely because they could underwrite fringe benefits used by an employee during private work periods.

█ We reject annualization of Mistick's contributions for the same reasons. Mistick made contributions to the FBP only for the Davis–Bacon work performed by its employees whereas Mistick employees could draw on the funds in their trust accounts whether they were performing Davis–Bacon work or private work. The Administrator concluded that even if Mistick's FBP were *bona fide*, Mistick would receive only annualized credit. As noted earlier, annualized credit for employer contributions to a Davis–Bacon fringe benefit plan is computed by dividing total employer contributions for the year by the total number of hours worked by the employee during the year on both Davis–Bacon and private work. The Administrator explained that annualization ensures that an employer does not receive Davis–Bacon credit for contributions made for Davis–Bacon work but which pay for benefits used by an employee while performing private work. But the Administrator has not shown that Mistick's contributions to its FBP for Davis–Bacon work financed benefits which were used by employees during private work periods and which would have been funded by a separate fringe benefit plan for private work but for the FBP. It was therefore unreasonable for the Administrator to annualize Mistick's contributions to its FBP.[4]

We conclude that the Department's application of the "reasonable relationship" test in this case does not justify invalidation of Mistick's FBP.[5] Likewise, in disapproving Mistick's proposed medical reimbursement plan, the Department incorrectly applied the "reasonable relationship" test. Moreover, the Department incorrectly mandated annualization of Mistick's contributions to the FBP and to its proposed medical reimbursement

---

**4.** The court in *Miree* explained that "[i]f an employer chooses to provide a year-long fringe benefit, rather than cash or some other fringe benefit, the annualization principle simply ensures that a disproportionate amount of that benefit is not paid for out of wages earned on Davis–Bacon work." 930 F.2d at 1546. The Department emphasized that annualization "prevents [an employer from] using the Davis–Bacon work as the disproportionate or exclusive source of funding for benefits that are in fact continuous in nature and compensation for all the employee's work, both Davis–Bacon and private." Appellee's Brief at 17. It has not established, however, that the

fringe benefits used by Mistick's employees during periods of private work were financed primarily by Davis–Bacon contributions. The rationale for annualizing an employer's contributions therefore does not apply.

**5.** We might well reach a different conclusion if the employee trust accounts did not earn interest because the employees would not then receive the full value of Mistick's contributions. Although the Department chose not to, we accept Mistick's counsel's assertion at oral argument that the trust accounts earned interest.

plan.[6] We do not hold, however, that Mistick's FBP is *bona fide* plan or that Mistick's contributions to it must be fully credited. The Department identified a second ground for invalidating the FBP, a ground with more substance.

### B. Disbursements for Non–Bona Fide Benefits

■ The Administrator offered an additional reason for finding that Mistick's FBP was not *bona fide*. She found that disbursements were made from the plan for expenses not recognized as fringe benefits under the Davis–Bacon Act. JA 84. We affirm the finding but remand for the Department to determine whether this ground is itself sufficient to invalidate Mistick's FBP.

■ The Davis–Bacon Act credits employer contributions to an employee fringe benefit plan that finances specified fringe benefits and "other bona fide fringe benefits." 40 U.S.C. § 276a(b)(2). Congress has not defined "other bona fide fringe benefits." Accordingly, we must defer to the Department's interpretation of this phrase if it is reasonable. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

■ The Department's regulations interpret the phrase as an "open end" provision that enables the Labor Secretary to recognize new fringe benefits "as they become prevailing." 29 C.F.R. § 5.29(c). The Secretary has determined that work-related tool, equipment and vehicle expenses are business expenses of the employer which may not be charged to the employee. He does not recognize these work-related expenses as *bona fide* fringe benefits under the Davis–Bacon Act because, notwithstanding the expenses were common in the construction industry when Congress enacted the statute, the statute did not include them in the list of then-current *bona fide* benefits. We find the Department's interpretation of the relevant statutory language reasonable and therefore entitled to *Chevron* deference.

■ Disbursements were made from the FBP for work-related tool, equipment and vehicle expenses. JA 84. We therefore uphold the Department's determination that disbursements were made from the FBP for non-*bona fide* benefits. Mistick may not receive Davis–Bacon credit for contributions that paid for these disbursements. Instead, as the Department ordered, Mistick must pay back wages to the affected employees to the extent of these contributions. We also affirm the Department's disapproval of Mistick's proposed working condition fringe benefit plan because it authorizes disbursement for any "working condition fringe" as defined by the Internal Revenue Code, 26 U.S.C. § 132(d), regardless whether the expense is recognized as a *bona fide* fringe benefit under the Davis–Bacon Act.

### III. Conclusion

We reject the Department's disapproval of Mistick's proposed medical reimbursement plan and affirm the Department's disapproval of Mistick's proposed working condition fringe benefit plan. We do not decide whether Mistick's fringe benefit plan was a *bona fide* plan to which Mistick's future contributions must be credited under the Davis–Bacon Act. The Administrator identified two grounds for invalidating the FBP, that is, for determining that it was not *bona fide* and for denying Mistick credit for future contributions to it. We reject the first ground, the alleged lack of a reasonable relationship between the employer's contributions and the costs of providing benefits to its employees, but endorse the second ground, that is, disbursements for non-*bona fide* benefits. It is unclear, however, whether the Administrator would invalidate Mistick's FBP on the second ground alone. We therefore reverse in part,

---

**6.** Because we conclude that Mistick's contributions should not be annualized, or given only partial credit, we need not address the issue raised by Mistick regarding whether the alleged overpayments to the FBP must be refunded to the affected employees as back wages or whether Mistick should be allowed to redirect the overpayments from its FBP to its Administrator-approved profit sharing plan.

affirm in part and remand to the district court with instructions to remand to the Department. On remand, the Department should determine whether the fact of disbursements for non-*bona fide* benefits alone warrants invalidation of Mistick's fringe benefit plan and should re-calculate, consistent with this opinion, any back wages owed by Mistick to its employees.

*So ordered.*